We turn to our final case of the morning, Langley v. Kijakazi, Appeal No. 22-3008. And Mr. Farr, we recognize you. Thank you. Good afternoon, and may it please the Court. I have been thinking about this case more since my briefing, and I feel honestly like I've gotten way too broad in some of that briefing when the issues are maybe narrower than I've presented them. I feel like at the end of the day an ALJ has a duty to explain how she considers medical opinion evidence. She doesn't have to adopt those opinions in whole or in part, but she has to explain them. And in this case, she had three medical opinions to consider, two from non-examining consultants, one from an examining consultant. The two non-examining consultants indicated brief supervision and interactions with coworkers. The ALJ then added on language saying actually she could handle normal supervisory interaction. That doesn't seem to be supported by the record, and it's not explained as to why she thinks that is actually something that better accounts for social interaction limitations. If the ALJ had used the language actually that the consultants had used, it's likely that that would have been more preclusive because they wouldn't have even been able to interact with a supervisor as much as they might have to to deal with normal feedback. But the judge added on this extra component, and it's not clear where that's coming from. And it's more confusing because the judge found those consultant opinions to be supported and consistent with the evidence, but she said that greater limitations were warranted. So to then walk back and have fewer limitations is, without further explanation, just baffling. Mr. Farr, I'm sorry. In what way does the ALJ impose additional limitations? Are we talking about – I'm sorry, stepping back. Are we talking about the issue of brief and or occasional when it comes – because the ALJ says limits petitioner to no more than occasional brief interaction with the general public coworkers and supervisors, right? And so that's where I think that my briefing starts sidestepping to where it's more complicated and convoluted, and I'd rather walk back from that a little bit today to narrow this a little bit. I think when she adds on the tolerance for normal supervision, that extra element in her RFC, that's the separate thing. So I don't think we even have to get into parsing out this brief occasional if we're just focused on the fact that she says that normal supervisory interactions are tolerated within that. And your position is that there's no support in the record for normal supervisory interactions? Correct. Correct. But maybe there would be if the judge had explained herself. I'm not saying she couldn't get there, but I don't read the record to say that, and I don't know where she's coming from to get that addition. So rather than having greater limitations, she's actually kind of walked it back and said, well, brief, but all normal supervisory interactions you would expect are going to be okay, which at some point that's probably going to exceed brief. I don't know how those are reconcilable. Maybe they are, but she doesn't explain it. And then when we get to the consultative examiner's opinion, she says that's not supported, not consistent. She doesn't explain how. My read of the record with all the inpatient hospitalizations, the ER visits, the abnormal findings on outpatient medication management, the crying and low energy actually in the consultative exam, seems like there's plenty of evidence consistent with her opinion, plenty of evidence in her own examination report that supports her opinion. That leaves the question of whether this is an issue reserved to the commissioner. I don't think that an opinion that is saying somebody lacks motivation is an issue reserved to the commissioner. That's not saying she cannot work. It's saying motivation, low motivation, which is a common symptom of depression, would interfere with her ability to show up to a job. She's saying she might not have the drive. She's saying that she might have more panic attacks if she's participating in not only the application process, but the training required for a new job, which would at least go to off task. If not, okay, this person's exhibiting distracting behavior, they're going to send her home, whatever. And then also saying that this person might not have the focus to attend to tasks for extended periods. These all sound like reasonable functional limitations the judge could have considered and either rejected or adopted into her RFC, but it's not clear how any of that could just be brushed off as on an issue reserved to the commissioner. And so I think that's how I would narrow the consideration of this case. I'd be happy to try to answer questions about some of the other concerns I raised in my briefing, but I really feel like that's the concern. Maybe on remand she reaches the same conclusion, but she explains herself, and that would be fine. But I think she has to meet her regulatory obligation that's consistent with Seventh Circuit precedent and actually explain why she's departing from these opinions and not just using some boilerplate brush off about, oh, supported and consistent, no explanation why. I still have a lot of time left, but I don't know. You can reserve it all for rebuttal. All right, no questions right now? No, okay, thank you. Mr. Meyer. Good morning, Your Honor's counsel. May it please the court. Drew Meyer. And I represent the appellee. Commissioner of Social Security. Your Honor, the RFC here reasonably conveys the limitations articulated in Dr. Shipley's narrative opinion. As this court has held in Pavlicek and other cases, an ALJ may rely on the narrative section of a reviewing expert's opinion in order to formulate an RFC. And as this court hold in Resha, an ALJ has some latitude with the exact wording in formulating that RFC as long as it conveys in some way the limitations at issue. Well, let me ask you about one of the two specific examples that Mr. Farr just gave. Yes, Your Honor. Okay, so we look at the ALJ's opinion on page 17 of 22. And she says the undersigned, meaning the ALJ, has limited claimant to only occasional brief interaction with coworkers and supervisors. And then she says, as set forth above, the undersigned finds the claimant can tolerate normal supervisory interactions as needed and can tolerate interactions to receive instructions as needed, blah, blah, blah. Okay. How is that consistent and therefore logical to say in this first sentence that claimant is limited to brief interaction with supervisors and in the next sentence to say can tolerate normal supervisory interactions? Yes, Your Honor. And then it's followed up on page 20. She repeats further limitation regarding interaction with coworkers and supervisors. So she's, I guess, repeated this idea that there should be limits with the supervisors. In contrast, this sentence where she talks about normal interactions with supervisors. Yes, Your Honor. And this actually goes to a question that Judge Lee asked as well as to what additional limitations the RFC included to address the supervisory interaction limitation. So the only reasonable way to read this RFC is that these limitations overlap and are cumulative. So that the reference to normal supervisory interactions happens in a context in which we are already dealing with a limitation to occasional brief supervisory interactions, a situation in which we are dealing with work, dealing with simple, routine, repetitive tasks, a short initial learning period, no complex communication of any kind, and no teamwork. So we have a constellation of relevant limitations that the RFC contains. So she can have normal interactions with her supervisors so long as they're short. Exactly right, Your Honor. Got it. So they're just overlapping. So normal within the context of all of these other limitations that the RFC expresses. And with normal interactions, right? So normal interactions such as performance appraisals, corrections, instructions. So normal interactions describing the type of interaction and then brief and occasional describing the volume or amount of interactions or duration of those interactions. Yes, Your Honor. I think that's fair to say. Unless the court has any other questions on that particular issue, the RFC, again, reasonably conveys the narrative opinion of Dr. Shipley. I noticed that Ms. Langley does not argue in favor of her interpretation of Dr. Shipley's statement that Ms. Langley should be limited to brief supervision interactions with coworkers and work situations. As we point out in our brief, the concept of an interaction with a work situation makes no sense, is conceptually tortured. And the RFC conveys a reasonable reading of that clause to mean that Ms. Langley is limited to brief supervision and interactions with coworkers in work situations. Additional evidence that this was indeed the ALJ's reading of this clause comes on page 70 of the record during the colloquy that the ALJ had with the vocational expert in which she quotes this passage verbatim except replacing and work situations with in work situations. And again, that is a very reasonable way to read that part of Dr. Shipley's opinion and it is reflected in the RFC. Because it is a reasonable reading, according to this court's jurisprudence, including its decision in Prill, a reasonable evidentiary determination should stand on judicial review even if a different one is possible. What Ms. Langley is asking is that you supplant the ALJ's reasonable reading of Dr. Shipley's narrative with her own, which again, as we argue in our brief, is illogical. The RFC did not just augment Dr. Shipley's recommendations for limitations regarding supervisory interaction. It also augmented them regarding the mental functioning category of concentration, persistence, and pace. It limited Ms. Langley to work with little diversion or interruption. It limited her to no fast pace or assembly line production requirements. And those go directly to the issue of concentration, persistence, and pace. Can you turn to Dr. Sprinkle? Absolutely, Your Honor. If we find that the district court did fill in some gaps there with Dr. Sprinkle's examination findings, do we need to remand? I'm afraid I don't understand the question, Your Honor. I beg your pardon. Ms. Langley is complaining that there's further inconsistency with what the ALJ found Dr. Sprinkle's findings versus what was found in Ms. Langley's medical exam, her mental health history, and so forth and so on. I see. Well, first of all, Your Honor, Ms. Langley makes a point of saying that some evidence supported Ms. Sprinkle's opinion. But that is not the issue before the court. The issue before the court is whether substantial evidence supported the ALJ's evaluation. And in this case, more than ample evidence supported the ALJ's determination that Dr. Sprinkle's opinion was inconsistent with and unsupported by the record. Most saliently, Dr. Sprinkle held or found that Ms. Langley would struggle to maintain focus and attention after just having stated that Ms. Langley had adequate attention and concentration and could focus for sustained periods. So the ALJ juxtaposed those two totally diametrically opposed findings and then at the end of her evaluation pointed out that the opinions of Dr. Sprinkle were inconsistent with and unsupported by her own examination notes. Of course, this court has held several times in Prill, for example, that an ALJ reasonably discounts a medical opinion that is inconsistent with the source's own examination notes or is indeed internally inconsistent. So as far as Ms. Langley expressed some dissatisfaction with the level of explanation that the ALJ supplied in support of her evaluation of Dr. Sprinkle's opinion, but of course it's well settled in this court that an ALJ need only minimally articulate her rationale. And here the ALJ did just that. She summarized and detailed Dr. Sprinkle's findings and opinions over two pages of her decision, A-2021-22 in the appendix, and drew these clear inconsistencies and then found that the opinion was not persuasive based on those inconsistencies. So if the court has no more questions, we submit that the ALJ's challenge determinations here were reasonable, rested on substantial evidence, and should be affirmed. Thank you very much. Thank you. Mr. Farr? I would say that a lot of what we just heard violates the generate doctrine, unfortunately, because the ALJ did not provide those reasons in her decision. She has to minimally articulate her reasoning. I agree. I don't think simply using the word inconsistent and the word supportable articulates reasoning. It provides no extra context, especially in regards to Dr. Shipley's opinion – sorry, Dr. Sprinkle's opinion. That was largely rejected because it was supposedly on an issue reserved to the commissioner, which we didn't even hear anything about that today. That was not on an issue reserved to the commissioner, and using two words at the end, supportable and not supportive, not consistent, doesn't suddenly give a good backup reason for this. We've had reasoning supplied by the district court and by opposing counsel to say this is what the judge could have meant, this is what she could have been thinking, but we don't actually know what she was thinking in this decision. I don't think it's too much to ask that a reviewing body be able to actually understand this is what was in the judge's head, she put it on the paper, so we know that. Right now we don't have that, and right now we don't have opinions that are clearly saying this person can still work. I'd also say that since it was brought up, the difference between in and and. I have seen opinions from state agency consultants using all sorts of variations on these phrases. I don't know where they got it from, but sometimes they'll talk about brief interactions with coworkers in supervision, sometimes they'll say in work situations, sometimes they'll say and work situations, sometimes they'll leave it off. This ambiguity is originating from employees of the agency, and it seems unreasonable to give the agency the benefit of the doubt of just assuming that their interpretation makes more sense when all that would be necessary is to recontact these state agency consultants, or retrain them in the future so that they stop using these ambiguous phrases. I think that in work situations implies when you're at work, coworkers and supervisors are there, okay, and work situations is speaking to a concentration or focus or persistence issue that you can have brief supervision, you can have brief interactions with coworkers, and you can briefly interact with work situations, which seems consistent with the opinion of the consultative examiner that you might see Ms. Langley have issues with persisting with tasks throughout the workday. I also don't think that it's internally inconsistent that she said that she could persist on tasks and yet over the course of a work schedule might not be able to persist. Those are two separate conversations. If it was the ALJ's intention to read those as distinct, she could have explained herself. Again, this all could come back to if the ALJ just explained herself, we might not even be here, but we don't really know what she meant. She should have explained herself. I think remand would fix that, and if there are no further questions, I'll leave it with that. Thank you. Thank you. Thank you to the parties. We will take this case under advisement and conclude court for today.